UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

TROY JOSEPH AYDELL

VERSUS

NANCY A. BERRYHILL

CIVIL ACTION

NO. 17-1181-SDD-EWD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, this 1st day of March 2019.

_____
ERIN WILDER-DOOMES
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

TROY JOSEPH AYDELL

VERSUS

NANCY A. BERRYHILL

CIVIL ACTION

NO. 17-1181-SDD-EWD

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Troy Joseph Aydell ("Plaintiff"), brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability insurance benefits ("DIB").[1] Plaintiff has filed an Opening Brief,[2] the Commissioner has filed an Opposition Memorandum,[3] and Plaintiff has filed a Reply.[4]

Based on the applicable standard of review under § 405(g) and the analysis which follows, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

I.   **Procedural History**

Plaintiff filed an application for DIB[5] alleging disability beginning November 2, 2013[6] due to, *inter alia*, back and neck problems as well as psychological issues.[7] Plaintiff's claim was

---

[1] *See*, AR pp. 150-153 (application for DIB); AR pp. 1-6 (Notice of Appeals Council Action). References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] p. [page number(s)]." References to the record of administrative proceedings filed in this case are designated by "(AR [page number(s)]."

[2] R. Doc. 8.

[3] R. Doc. 10.

[4] R. Doc. 11.

[5] AR pp. 150-153. The ALJ's October 27, 2016 decision states that Plaintiff "also protectively filed a Title XVI application for supplemental security income on November 3, 2014," AR p. 13. Although the administrative record does not include a separate application for supplemental security income ("SSI"), Plaintiff's application for DIB states that he has filed or intends to file for SSI. AR p. 150.

[6] AR p. 150.

[7] *See*, AR p. 168 (August 21, 2015 Adult Disability Report in which Plaintiff asserted the following physical and mental conditions limited his ability to work: "lower back/spinal problems, neck problems, nerve damaged on left leg, bipolar, anxiety."); AR p. 33 (transcript of September 2, 2016 hearing before Administrative Law Judge ("ALJ")

initially denied on September 11, 2015.[8]  Thereafter, Plaintiff requested a hearing before an ALJ.[9]  A hearing was held on September 2, 2016 at which Plaintiff, represented by counsel, testified.[10]

On October 27, 2016, the ALJ issued a notice of unfavorable decision.[11]  Plaintiff requested review by the Appeals Council.[12]  On September 8, 2017, the Appeals Council denied Plaintiff's request for review.[13]  On October 19, 2017, Plaintiff filed his Complaint.[14]  Accordingly, Plaintiff exhausted his administrative remedies before timely filing this action for judicial review and the ALJ's decision is the Commissioner's final decision for purposes of judicial review.[15]

## II.    Standard of Review

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to two inquiries: (1) whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's final decision applies the proper legal standards.[16]  If the Commissioner fails to apply the correct legal

---

wherein Plaintiff stated that he could not work due to depression and "back trouble"); AR p. 38 (Plaintiff's testimony regarding his anxiety).

[8] AR pp. 62-68.

[9] AR pp. 75-76.

[10] AR pp. 28-48.

[11] AR pp. 10-24.

[12] AR pp 7-9.

[13] AR pp. 1-4.

[14] R. Doc. 1.

[15] *See*, 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision.  The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised.  You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").

[16] *Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001); *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal.[17]

### III. The ALJ's Decision

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.[18] The regulations require the ALJ to apply a five-step sequential evaluation to each claim for benefits.[19] In the five-step sequence used to evaluate claims the Commissioner must determine whether: (1) the claimant is currently engaged in substantial gainful activity; (2) the claimant has a severe medically determinable impairment(s); (3) the impairment(s) meets or equals the severity of a listed impairment in Appendix 1 of the regulations; (4) the impairment(s) prevents the claimant from performing past relevant work; and, (5) the impairment(s) prevents the claimant from doing any other work.[20]

The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability.[21] If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity ("RFC"), age, education and past work experience, that he or she is capable of performing other work.[22] If the Commissioner proves other work exists which the claimant can perform, the

---

[17] *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981); *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981); *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

[18] 20 C.F.R. §§ 404.1505; 416.905.

[19] 20 C.F.R. §§ 404.1520; 416.920.

[20] *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

[21] *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

[22] 20 C.F.R § 404.1520(g)(1).

claimant is given the chance to prove that he or she cannot, in fact, perform that work.[23]

Here, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act from November 2, 2013 (the alleged onset date) through his date of decision (October 27, 2016). Although the ALJ determined that Plaintiff suffered from severe impairments of degenerative disc disease with radiculopathy, affective disorder, and anxiety disorder,[24] the ALJ found that such severe impairments did not render Plaintiff disabled. After determining that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment,[25] the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)" except that Plaintiff was "limited to understanding, remembering, and carrying out simple and routine tasks" and limited to "occasional interaction with others, including the general public, co-workers, and supervisors."[26] Further, and significant to Plaintiff's appeal, the ALJ also found that Plaintiff "has a limited education and is able to communicate in English."[27] Considering Plaintiff's age, education, work capacity, and RFC, the ALJ found that there were jobs in the national economy that Plaintiff could perform. Specifically, the ALJ found that Plaintiff could perform the representative occupations of cleaner, hand packager, and vehicle and equipment cleaner – each considered light, unskilled work – and therefore Plaintiff was not disabled.[28]

---

[23] *Muse*, 925 F.2d at 789.

[24] AR p. 16.

[25] AR pp. 16-18. The ALJ specifically considered whether Plaintiff's physical impairments met the criteria for Listing 1.04, disorders of the spine (addressing, *inter alia*, degenerative disc disease resulting in compromise of a nerve root or the spinal cord) and whether Plaintiff's mental impairments met the criteria for Listings 12.04 (depressive, bipolar and related disorders) or 12.06 (anxiety and obsessive compulsive disorder).

[26] AR p. 18.

[27] AR p. 22.

[28] AR pp. 23-24.

4

### IV.  Plaintiff's Allegations of Error

On appeal, Plaintiff focuses on the ALJ's determination that Plaintiff has a "limited education" and argues that Plaintiff should have been considered illiterate instead.[29] Plaintiff contends that illiteracy combined with Plaintiff's physical capabilities and age would result in a finding of disability under 20 C.F.R., Part 404, Subpart P, Appendix 2, Rule 201.17 ("Grid Rule 201.17") or Rule 202.09 ("Grid Rule 202.09").[30] Plaintiff also argues that the ALJ committed reversible error when the ALJ failed to obtain a May 24, 2012 Medical Source Statement ("the First MSS") completed by his psychiatrist, Dr. Ron Taravella, and a January 23, 2013 Consultative Examination (the "CE") completed by Dr. Donnell Ashford that would have supported his position that he is illiterate. If Plaintiff is illiterate, Plaintiff would be considered disabled pursuant to Grid Rule 201.17 or Grid Rule 202.09 whether he was limited to light work or sedentary work. Alternatively, if Plaintiff has an education of "limited or less," Plaintiff would be considered disabled only if limited to sedentary work, but not disabled if limited to light work. As substantial evidence supports the ALJ's finding that Plaintiff was not disabled, the final decision should be affirmed.

---

[29] R. Doc. 8, pp. 6-13. In his reply brief, Plaintiff also argues that even if not considered illiterate, the ALJ should have found that he had a "severe and significant" learning impairment. *See*, R. Doc. 11, p. 2.

[30] R. Doc. 8, pp. 12-13 ("The ALJ should apply the rules of Appendix 2 to Subpart P of Part 404 as part of the medical-vocational guidelines. Assuming for purposes of argument that the claimant would be capable of light work, a finding of disability would be called for at age fifty pursuant to Rule 202.09. With a sedentary RFC, the claimant grids in at age forty-five pursuant to Rule 201.17 of the Medical-Vocational guidelines. As of age fifty, with the same profile, the claimant grids in even at light work pursuant to Rule 202.09.").

V.     Law and Analysis

If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed.[31] Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. It is more than a mere scintilla and less than a preponderance.[32] A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[33] Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side.[34] In applying the substantial evidence standard the court must review the entire record as whole, but may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence weighs against the Commissioner's decision.[35] Here, as stated above, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform light work…except that he is limited to understanding, remembering, and carrying out simple and routine tasks. Additionally, the claimant is limited to occasional interaction with others, including the general public, co-workers, and supervisors."[36] Based on this RFC, Plaintiff's age, "limited" educational level, and work experience, the ALJ determined at step five of the sequential analysis that Plaintiff was not disabled.

---

[31] *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1422 (1971); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[32] *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[33] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).

[34] *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

[35] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[36] AR p. 18.

### A. Substantial Evidence Supports the ALJ's Rejection of Plaintiff's Claim of Illiteracy

Plaintiff argues that the ALJ should have considered Plaintiff to be illiterate and that had the ALJ so found, Plaintiff would be disabled pursuant to the Medical-Vocational Guidelines set out in 20 CFR, Part 404, Subpart P, Appendix 2 (the "Grid Rules"). Pursuant to 20 CFR § 404.1564, the Social Security Administration considers education as a vocational factor[37] and defines "illiteracy" as "the inability to read or write."[38] A person is considered illiterate "if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling."[39] "A claimant is not per se disabled if he or she is illiterate;"[40] however, a claimant's educational level (including whether a claimant is illiterate) is considered at step five of the sequential analysis.[41]

---

[37] Although Plaintiff's briefing focuses on illiteracy as a vocational factor (for purposes of application of the Grid Rules in step five of the sequential analysis), Plaintiff also states in his brief that the ALJ erred at step three of the process and failed "to properly consider medical listings." R. Doc. 8, p. 6. Despite this statement, Plaintiff does not argue that illiteracy is a listed impairment, and it is clear from the regulations that educational level is considered a vocational factor.

[38] 29 CFR § 404.1564(b)(1). *See also*, *Pena v. Astrue*, 271 Fed. Appx. 382, 384 (5th Cir. 2008) ("A claimant's education is a vocational factor the ALJ considers in determining what jobs a claimant is capable of performing; illiteracy is one category of education. The regulations consider a claimant illiterate if 'the person cannot read or write a simple message such as instructions or inventory lists.'").

[39] *Id*.

[40] *Lopez v. Colvin*, Civil Action No. 3:14-CV-00571, 2015 WL 1473677, at * 11 (N.D. Tex. March 31, 2015) (quoting *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001)). *See also*, *Martinz v. Colvin*, Civil No. 3-14-cv-310, 2015 WL 5254241, at * 6 (W.D. Tex. Sept. 9, 2015) ("courts have rejected the notion that a claimant is *per se* disabled if illiterate or unable to communicate in English.").

[41] In his Reply brief, Plaintiff contends that he "doesn't have to be 'illiterate' as defined by the Rules and Regulations in order to have a learning impairment that is severe and significant. Rather the undisputed fact is that the Claimant had learning disabilities and that he has difficulty with normal day-to-day reading and writing skills. Consequently, those difficulties should be part of the RFC when evaluating the claimant's abilities." R. Doc. 11, pp. 2-3. As discussed herein, there is substantial evidence to support the ALJ's finding that Plaintiff is not illiterate. Additionally, assuming *arguendo* that Plaintiff does have some sort of learning disability, Plaintiff's RFC is limited to "understanding, remembering, and carrying out simple and routine tasks." Plaintiff has not explained how such RFC does not accommodate his asserted learning disability.

7

"The Grid Rules were promulgated to 'improve both the uniformity and efficiency' of the step-five determination."[42] The Supreme Court has explained that the Grid Rules

> consist of a matrix of the four factors identified by Congress – physical ability, age, education, and work experience – and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. If such work exists, the claimant is not considered disabled.[43]

Grid Rules 201.01-201.29 address individuals who are limited to sedentary work, while Grid Rules 202.01-202.22 are directed to individuals who are limited to light work. Pursuant to Grid Rule 201.17, an individual between the ages of 45-49 who can perform sedentary work, is illiterate or unable to communicate in English, and who has unskilled work experience or no previous work experience is considered disabled.[44] Under Grid Rule 202.09, an individual closely approaching advanced age who can perform light work, is illiterate or unable to communicate in English, and who has unskilled work experience or no previous work experience is considered disabled. In contrast, under Grid Rules 201.18 and 202.10, a claimant of the same profiles with but with an education of "limited or less – at least literate and able to communicate in English" is not considered disabled.[45]

---

[42] *Gonzales v. Astrue*, Civil No. M-09-210, 2013 WL 1345298, at * 9 (S.D. Tex. March 29, 2013) (quoting *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)).

[43] *Heckler*, 461 U.S. at 462. *See also*, 20 CFR § 200.00(a) (the rules set out in 20 CFR, Part 404, Subpart P, Appendix 2 "reflect the analysis of the various vocational factors (*i.e.*, age, education, and work experience) in combination with the individual's residual functional capacity (used to determine his or her maximum sustained work capability for sedentary, light, medium, heavy, or very heavy work) in evaluating the individual's ability to engage in substantial gainful activity in other than his or her vocationally relevant past work.").

[44] Plaintiff was born on August 24, 1966 and was 47 years old on the alleged disability onset date. AR p. 150. However, Plaintiff subsequently changed age categories to a "person closely approaching advanced age" (*i.e.*, age 50-54) prior to the ALJ's October 27, 2016 decision. 20 C.F.R. § 404.1563(d).

[45] Grid Rule 201.18 provides that a younger individual limited to sedentary work and considered to be unskilled or have no previous work experience and who has "limited or less" education is not disabled. Grid Rule 202.10 provides

8

Here, the ALJ determined that Plaintiff "has a limited education and is able to communicate in English" and provided the following explanation:

> The claimant has a tenth grade education. He clarified at the hearing that he completed the ninth grade and started tenth grade, but did not finish. Additionally, although he argues he is illiterate, he is able to speak, understand, read, and write English.[46]

"Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs."[47] The Social Security Administration generally considers "that a 7th grade through the 11th grade level of formal education is a limited education."[48] During the September 2, 2016 hearing, Plaintiff testified that he completed ninth grade and "quit in the tenth."[49] Although a claimant's formal schooling is not dispositive when determining educational level or literacy, it is a factor to be considered.[50] Moreover, while Plaintiff testified that he does not read because "I'm not very good at it,"[51] he also represented in his Adult

---

that an individual closely approaching advanced age limited to light work and considered to be unskilled or have no previous work experience and who has "limited or less" education is not disabled.

[46] AR p. 22 (citations to the administrative record omitted).

[47] 20 CFR § 404.1564(b)(3).

[48] *Id*. The ALJ found that Plaintiff had a "limited education." The regulations also define "marginal education" as an educational level between illiteracy and limited education. "Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs" and is generally considered to be "formal schooling at a 6th grade level or less." 20 CFR § 404.1564(b)(2). The Grid Rules separate educational level between "illiterate" and "limited or less- at least literate and able to communicate in English." Accordingly, Plaintiff's argument that he should be considered disabled pursuant to Grid Rule 201.17 and/or 202.09 is contingent on whether Plaintiff is or is not literate, not whether Plaintiff has a marginal or limited education.

[49] AR p. 33.

[50] *See*, *Gonzalez*, 2013 WL 1345298, at * 11 (explaining that "Plaintiff's completion of the fifth grade is also evidence that tends to support the ALJ's finding that Plaintiff is literate" but noting that "this is not to say that Plaintiff's formal schooling is dispositive in determining literacy."); *Albritton v. Sullivan*, 889 F.2d 640, 643 (5th Cir. 1989) ("Albritton's formal schooling was no longer meaningful and did not represent his educational level in the face of uncontradicted evidence that he was functionally illiterate.").

[51] AR p. 40. The undersigned notes that it appears that someone other than Plaintiff completed Plaintiff's work history report. *See*, AR p. 193. Additionally, Plaintiff testified that when he took his driver's test "way back when [he] got [his] driver's license" he had "help" reading the written test. AR p. 41. That Plaintiff presumably asked someone else to fill out the social security form and that he needed help on his written driver's exam is not dispositive of whether Plaintiff is illiterate. *See*, *Gonzalez*, 2013 WL 1345298, at * 12 ("While Plaintiff may have requested assistance

Disability Report that he could speak and understand English, read and understand English, and could write more than his name in English.[52] In light of Plaintiff's level of formal education, as well as his representation that he can read, write, and understand English in his submission to the Social Security Administration, the undersigned finds that substantial evidence supports the ALJ's determination that the Plaintiff has a limited education and is able to communicate in English. Because Plaintiff is not illiterate, Grid Rules 201.17 and 202.09 would not apply.[53]

### B. The ALJ Did Not Commit Reversible Error by Failing to Include the May 24, 2012 MSS from Dr. Taravella or January 23, 2013 CE from Dr. Ashford in the Administrative Record

The First MSS and CE were completed in conjunction with a previous application for social security benefits and are not part of the administrative record for the instant claim. Plaintiff contends that the ALJ failed to follow certain procedures set forth in the Hearings, Appeals and Litigation Law Manual ("HALLEX") that required the ALJ to obtain the First MSS and the CE.[54] Plaintiff primarily contends that the First MSS and CE support his position that he is illiterate;[55]

---

completing the form, it does not mean that he met the definition for being illiterate; for example, he may be able to read or write a simple message but still feels more comfortable having assistance in filling out the questionnaire (which could affect whether or not he received significant monetary benefits."). Moreover, while such circumstances may arguably allow for an inference of illiteracy, there was no testimony regarding the circumstances of either completion of the work history report or written driving exam was taken during the September 2, 2016 hearing. As noted above, the Court's task in reviewing the Commissioner's final decision is limited to deciding whether the Commissioner's decision is supported by substantial evidence, and such decision must be affirmed even if there is evidence on the other side. *Masterson*, 309 F.3d at 272; *Selders v. Sullivan*, 914 F.2d at 617.

[52] AR p. 167.

[53] *Compare*, *Albritton*, 889 F.2d at 642-643 (claimant was illiterate despite claimant's fourth-grade education in light of unchallenged testimony from claimant that he could not read and testimony from claimant's wife that she would read necessary things to him) and *Jimmerson v. Apfel*, 111 F.Supp.2d 846, 850 (E.D. Tex. 2000) ("the ALJ asked over thirty (30) questions of the Plaintiff concerning his ability to read. Each and every answer the Plaintiff gave was consistent with his testimony that he could not read and write. There was virtually no evidence presented at any hearing that was inconsistent with the Plaintiff's allegations of illiteracy."), *with Gonzalez*, 2013 WL 1345298, at * 10-11 (finding substantial evidence to support ALJ's finding that claimant was at least literate based on responses to Adult Disability Report representing claimant could read, write, and understand English and fact that Plaintiff completed fifth grade). Because substantial evidence supports the ALJ's determination that Plaintiff is not illiterate, the ALJ was not required to include illiteracy as a limitation when forming Plaintiff's RFC.

[54] R. Doc. 8, p. 13.

[55] R. Doc. 8, p. 7 ("[I]lliteracy is considered a 'severe' limitation as it relates to one's ability to handle competitive full time work. Once again, the instant ALJ did not fully evaluate the Claimant's educational limitations. Support for

10

however, in his reply brief, Plaintiff asserts that even if he is not "'illiterate' as defined by the Rules and Regulations," the ALJ should have considered him to have a "learning impairment that is severe and significant."[56] Plaintiff argues that the Commissioner had "an obligation to obtain medical exhibits in connection with prior applications,"[57] and that "the unobtained records would have significantly affected the ALJ's ultimate determination since the records were highly supportive of the limitations suggested by the Claimant."[58]

Plaintiff cites the following portion of HALLEX regarding obtaining evidence in prior claims:

> HO staff must consult with an ALJ about obtaining a prior claim(s) file when it may be necessary for a full adjudication of the issues before the ALJ. An ALJ will generally find that evidence in a prior claim(s) file is necessary for a full adjudication of the issues when the ALJ determines:
>
> There is a need to establish a longitudinal medical, educational, or vocational history; or
>
> The impairment is of a nature that evidence from a prior claim(s) file could make a difference in establishing whether disability is present in the current claim.[59]

"While HALLEX does not carry the authority of law," the Fifth Circuit has held that "'where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous that otherwise would be required.'"[60] Whether a

---

Plaintiff's contention is found in the Claimant's testimony, the findings of his treating physician, Dr. Taravella and the findings of psychiatrist Donnell Ashford, M.D., to include performance of the WRAT-III test to support this conclusion.").

[56] R. Doc. 11, p. 2.

[57] R. Doc. 8, p. 13.

[58] R. Doc. 8, p. 15.

[59] https://www.ssa.gov.OP/Home/hallex/I-02/I-2-1-13.html. Although Plaintiff appears to cite this section as "HALLEX I-2-6-58(A)" in his brief, the language relied upon is found in HALLEX I-2-1-13.

[60] *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (quoting *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)).

violation of HALLEX procedure constitutes reversible error depends on whether "prejudice results from the violation."[61] "Procedural perfection in administrative proceedings is not required,"[62] and procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision."[63] This Court "requires a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such a failure will be permitted to serve as the basis for relief from an ALJ's decision."[64] "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision."[65]

"While the Fifth Circuit requires the Commissioner to heed his own procedures and regulations, the claimant must still establish that she was prejudiced by the agency's failure to follow a particular rule."[66] Although Plaintiff is correct that the First MSS and the CE are not

---

[61] *Id*. at 459. *See also*, *Morgan v. Colvin*, 803 F.3d 773, 777 (5th Cir. 2015) ("Under our binding precedent, Social Security administrative hearings must follow their own policies. Such hearings are governed by the policies set forth in an internal manual called the Hearings, Appeals, and Litigation Law Manual (HALLEX). While other courts have held HALLEX not binding on the Commissioner, the Fifth Circuit utilizes the following stringent standard: "while HALLEX does not carry the authority of law, ... 'where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required,' " and "[i]f prejudice results from a violation, the result cannot stand.") (citing *Newton*)).

[62] *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988).

[63] *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988).

[64] *Dean v. Astrue*, Civil Action No. 07-881, 2009 WL 1505349, at * 4 (M.D. La. May 28, 2009). *See also*, *Curtis v. Commissioner of Social Sec. Admin*, Civil Action No. 06-2262, 2008 WL 919692, at * 2 (W.D. La. Feb. 27, 2008) ("procedural perfection in administrative proceedings is not required, however, and a judgment will not be reversed unless substantial rights have been affected. A violation of both HALLEX and due process requires proof of prejudice."). Although Plaintiff asserts that "the failure to follow the binding rules of the Administration is obviously reversible error," R. Doc. 8, p. 14, this Court, following the Fifth Circuit, requires a showing of prejudice.

[65] *Guillory v. Commissioner of Social Sec.*, Civil Action No. 08-0534, 2010 WL 376806, at * 10 (W.D. La. Jan. 25, 2010) (citing *Newton*, 209 F.3d at 458).

[66] *Darnell v. Astrue*, Civil Action No. 07-1404, 2009 WL 424794, at * 3 (W.D. La. Feb. 20, 2009) (citing *Shave v. Apfel*, 238 F.3d 592, 596-597 (5th Cir. 2001) ("This Court requires, however, a showing that the claimant was prejudiced by the agency's failure to follow a particular rule before such a failure will be permitted to serve as the basis for relief from an ALJ's decision.")).

included in the administrative record for this claim, Plaintiff provides the substance of the two records in his brief. Assuming, *arguendo*, that the ALJ violated HALLEX I-2-1-13 by failing to obtain the First MSS and the CE, the undersigned considers whether Plaintiff has established he was prejudiced by this failure.

With respect to the First MSS, Plaintiff contends that Dr. Taravella "noted that the claimant does appear to be of sub-average intellect" and assigned "marked" limitations in the following areas:

> ability to understand, remember and carry out detailed instructions; ability to accept instructions and respond appropriately to criticism from supervisors; ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to complete a normal workday or workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to be aware of normal hazards and take appropriate precautions.[67]

With respect to the CE, Plaintiff contends that Dr. Ashford:

> observed that the claimant reported performing poorly in school—D's and F's. He noted that he failed at least two grades and further noted that the claimant "has problems with written instructions" and will bring someone with him to fill out paperwork. It was also noted that the claimant reported that he has someone "figure his bills" for him. Also significant, the claimant was administered the WRATIII and achieved a reading subtest at the fourth grade level. He further reported that while the findings were consistent with a mood disorder, "it is not clear how well he understood the items." Dr. Ashford concludes: "I think he would have some difficulty sustaining effort and persisting at a normal pace over the course of a routine forty hour workweek. I think he might also experience some difficulty tolerating the stress/pressure associated with day-to-day work activities and demands."[68]

---

[67] R. Doc. 8, pp. 8-9.

[68] R. Doc. 8, p. 11.

13

Although Plaintiff argues that the First MSS and the CE should have been considered by the ALJ and would have supported Plaintiff's claim of illiteracy, the undersigned finds that Plaintiff has failed to show that the failure to include the records (even assuming inclusion was required) prejudiced Plaintiff.

With respect to Dr. Taravella's First MSS, a second MSS completed by Dr. Taravella dated April 23, 2016 *was* included in the administrative record and reflects similar purported "marked" limitations in similar areas.[69] The ALJ did consider the April 23, 2016 MSS and gave that MSS "little weight" based on the legible portions of Dr. Taravella's own records and a finding that "Dr. Taravella's extreme limitations are not consistent with the record as a whole, including minimal objective findings, reports of improvement or good control with treatment, and the claimant's care of his wife."[70] The undersigned agrees that legible portions of Dr. Taravella's treatment notes do not reflect the extreme limitations noted in the April 23, 2016 MSS (or, for that matter, the First MSS).[71] Moreover, Dr. Lindenmayer's medical records before and after the November 2, 2013

---

[69] The April 23, 2016 MSS defines "marked" as "the individual cannot usefully perform or sustain the activity" and notes marked limitations in: "remember locations and work-like procedures," "understand, remember and carry out simple instructions," "understand, remember and carry out detailed instructions," "make judgments on simple work-related decisions," "interact appropriately with the public," "accept instructions and respond appropriately to criticism from supervisors," "get along with co-workers or peers without (unduly) distracting them or exhibiting behavioral extremes," "respond appropriately to changes in a routine work setting," "maintain attention and concentration for extended period," "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," "sustain an ordinary routine without special supervision," "work in coordination with or proximity to others without being (unduly) distracted by them," "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," "be aware of normal hazards and take appropriate precautions," and "maintain socially appropriate behavior." AR p. 517-518.

[70] AR p. 21.

[71] AR p. 529 (August 9, 2014 note from Dr. Taravella reporting stable mood); AR p. 528 (November 8, 2014 note from Dr. Taravella reflecting stable mood, but with increased sadness and anxiety) AR p. 527 (February 7, 2015 note from Dr. Taravella reflecting stable mood); AR 526 (May 9, 2015 note from Dr. Taravella reflecting "mood stable but some ups and downs" and "stable chronic pain"). To the extent Plaintiff also asserts that the ALJ was obligated to recontact Dr. Taravella, *see* R. Doc. 8, p. 10-11, the regulations contemplate recontacting a treating physician as a possible option when the Commissioner is unable to make a decision "because the evidence in…the record is insufficient or inconsistent." 20 C.F.R. § 404.1520b(b). Here, there was substantial evidence to support the ALJ's decision.

onset date uniformly reflect normal mental status exams,[72] Plaintiff testified during the September 2, 2016 hearing that he had never been hospitalized or admitted for psychiatric care,[73] and the undersigned agrees that the record reflects a level of caregiving by Plaintiff of his wife that is inconsistent with extreme intellectual limitations.[74]  Finally, while Plaintiff cites Dr. Taravella's statement in the First MSS that Plaintiff appears to be of "sub-average intellect," that conclusion is directly contradicted by Dr. Taravella's April 23, 2016 MSS, in which he came to the opposite conclusion.[75]

With respect to the CE, the undersigned finds that even taking Plaintiff's characterization of that document as true, Plaintiff has likewise not shown any prejudice stemming from the ALJ's failure to include the CE in the record.  Plaintiff contends that Dr. Ashford reported Plaintiff performed poorly in school, had problems with written instructions, and scored at a 4th grade level on a reading subtest.  Assuming this educational level is correct, it would not support Plaintiff's claim that he is illiterate, which, as noted above, is defined as "the inability to read or write."[76]  Further, it appears that the RFC as developed by the ALJ *does* account for the difficulties Plaintiff may have in understanding instructions because the RFC provides that Plaintiff is "limited to

---

[72] *See*, *e.g.*, AR p. 313 (November 8, 2012) (noting on mental status exam that plaintiff exhibited normal mood and affect, normal judgment and thought content, and normal behavior); AR p. 321 (December 4, 2012) (same); AR p. 329 (January 4, 2013) (same); AR p. 337 (February 1, 2013) (same); AR p. 345 (March 1, 2013) (same); AR p. 353 (April 1, 2013) (same); AR p. 361 (May 1, 2013) (same); AR p. 385 (October 2, 2013 ) (same); AR p. 393 (December 2, 2013) (same); AR p. 456 (May 4, 2015) (noting speech and behavior appropriate); AR p. 545 (August 31, 2015) (mood, affect, and judgment noted as normal); AR p. 541 (March 7, 2016) (mood, affect, judgment normal); AR p. 610 (July 6, 2016) (mood, affect, judgment normal).

[73] AR p. 37.

[74] *See*, *e.g.*, AR p. 609 (July 6, 2016 record wherein Dr. Lindenmayer noted Plaintiff was concerned about his wife, "he's been having to take care of her and clean her wounds."); AR p. 541 (March 7, 2016 note from Dr. Lindenmayer stating that Plaintiff's wife "essentially needs total care.  He's able to take care of this without any issues."); AR p. 255 (December 31, 2014 note from Dr. Lindenmayer noting Plaintiff is "pretty much able to do everything he needs to do as well as take care of his disabled wife.").

[75] R. Doc. 518.

[76] *See* n.38, *supra*.

15

understanding, remembering, and carrying out simple and routine tasks."[77]  Accordingly, the undersigned finds that Plaintiff has not established any prejudice stemming from the ALJ's purported violations of HALLEX.

### C. Substantial Evidence Supports the ALJ's Determination that Plaintiff Could Perform Light Work

As discussed above, the undersigned finds that substantial evidence supports the ALJ's finding that Plaintiff has an educational level of "limited or less" (rather than illiterate).  Pursuant to Grid Rule 201.09, an individual closely approaching advanced age who is limited to sedentary (as opposed to light) work, who has an education of "limited or less" and who has unskilled work experience, or no previous work experience, is considered disabled.  Because Grid Rule 201.09 would result in a finding of disability if Plaintiff is "capable of no more than a sedentary range of work activity,"[78] the undersigned has also considered whether substantial evidence supports the ALJ's determination that Plaintiff is capable of light, rather than sedentary, work.

Under the regulations, "sedentary" work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties."[79]  In contrast, "light" work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and

---

[77] AR p. 18.  Plaintiff contends that "he has difficulty with normal day-to-day reading and writing skills.  Consequently, those difficulties should be part of the RFC when evaluating the claimant's abilities." R. Doc. 11, pp. 2-3.  However, Plaintiff does not specifically explain how the RFC developed by the ALJ is deficient.

[78] R. Doc. 8, p. 12.

[79] 20 CFR § 404.1567(a).

16

pulling of arm or leg controls."[80] A claimant who is capable of performing light work is also considered able to do sedentary work.[81]

The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity."[82] A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record.[83] A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[84] During the September 2, 2016 hearing, Plaintiff testified that he can rinse dishes, take out the trash, do laundry, and drive.[85] Plaintiff testified that he could lift and carry "about the weight of a gallon of milk across the room."[86] While Plaintiff stated that he uses a cane, he also acknowledged that it was not prescribed.[87] In contrast to his hearing testimony regarding limited lifting of his wheelchair-bound wife,[88] Plaintiff's medical records reflect multiple entries in which Plaintiff reported more extensive lifting and care.[89] Further, the medical records from Dr. Lindenmayer (with whom

---

[80] 20 CFR § 404.1567(b).

[81] *Id*.

[82] *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985).

[83] *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[84] *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).

[85] AR pp. 34-35.

[86] AR p. 35.

[87] AR p. 43.

[88] During the hearing, Plaintiff confirmed that he cares for his wife, who weighs "about 85 pounds" and explained that "[s]he can stand up, I just pick her up from her armpits and she stands up and walks a little bit to help me out when I take her to the bathroom or put her in bed." AR pp. 34 & 42.

[89] AR p. 328 (January 4, 2013 progress note from Dr. Brian Lindenmayer noting new complaint of right shoulder pain and stating "His wife is debilitated due to rheumatoid arthritis and is in a wheelchair. He is constantly picking her up. He is not sure if this happened from overuse with that."); AR p. 337 (February 2, 2013 follow up with Dr. Lindenmayer) ("His wife is debilitated…and is in a wheelchair. He is constantly picking her up."); AR p. 419 (August 4, 2014 note from Dr. Lindenmayer) ("He states he's been out of all of his medications. He's been having a lot of problems. His wife's condition continues to worsen. She is wheel-chair bound and basically cannot do anything for herself. She has severe rheumatoid arthritis and he has to take care of her including feeding her. He has to pick her up out of the wheelchair…."); AR p. 424 (October 3, 2014 Lindenmayer) ("He is constantly picking up his wife who

Plaintiff treated for his back pain) reflect that Plaintiff's pain was well-managed through his medication regime both before and after the alleged onset date of November 2, 2013,[90] and that Plaintiff did not report negative side effects with respect to his medications.[91] Finally, although the administrative record includes one progress note reflecting a "questionably positive" straight leg raise,[92] and there are progress notes reflecting Plaintiff's decreased range of motion,[93] there

---

is wheelchair-bound."); AR p. 544 (August 31, 2015 Lindenmayer) ("He states his condition is getting worse. His wife is completely disabled and wheelchair bound. He is [sic] been having to take care of her doing a lot of lifting of her and helping her with bathing, etc."); AR p. 542 ("His wife is suffering from severe deforming rheumatoid arthritis and is wheelchair-bound. He has to pick her up and carry her to and from the bed and bathroom. This causes increased pain."); AR p 540 (March 7, 2016 Lindenmayer) ("He has to take care of her including lifting moving and bathing. She essentially needs total care. He's able to take care of this without any issues."); AR p. 609 (July 6, 2016 Lindenmayer) ("he has personally been doing okay" but is concerned about his wife because "He's been having to take care of her and clean her wounds.").

[90] AR p. 313 (November 8, 2012) ("He states his pain continues to be adequately controlled on the Percocet 4 times a day."); AR p. 321 (December 4, 2012) ("He states his pain continues to be adequately controlled on the Percocet…He states his pain is down to a 4/10 on the medication."); AR p. 328 (January 4, 2013) ("his back is [sic] been doing very well. He states his back pain has been about a 3/10."); AR p. 337 (February 1, 2013) ("He states his back has been doing very well. He states his back pain has been about a 3/10."); AR p. 361 (May 1, 2013) ("He is still having a little but increased mid-back pain, but it is well-controlled and he states his low back pain is well-controlled on current regimen. He has been taking his Percocet with good relief of his pains. He is otherwise without complaints."); AR p. 385 (October 2, 2013) ("Doing very well, but starting to have neck pain and his left hip is becoming a problem. Having good relief with Percocet. Pain at 4/10."); AR p. 406 (February 28, 2014) ("He still has mild to moderate pain on the medicine depending on his activity level."); AR p. 425 (October 3, 2014) ("Since restarting his medication, he has been doing much better. He states his pain on the meds has been about a 4/10."); AR p. 255 (December 31, 2014) (noting medications are "helping a lot. He states he's pretty much able to do everything he needs to do as well as take care of his disabled wife. He's otherwise without complaints."); AR p. 542 (November 2, 2015) ("He's been doing well" on medications," rates pain at a 6/10, "He's able to do [sic] of daily living" despite increased pain caused by picking up and carrying his wife); AR p. 540 (March 7, 2016) ("States medications are 'perfect'"); AR p. 611 (May 6, 2016) ("He has actually been doing fairly well. He states since the weather is warming up his pain has improved. He rates his pain at 5/10 today worse in low back. He does have some intermittent radicular pain" but Plaintiff states medication as prescribed provided "good relief."); AR p. 610 (July 6, 2016) (Medications provide "good relief of his low back pain." "Overall he's pleased with his current regimen. He is otherwise without complaints.").

[91] AR p. 540 (March 7, 2016) (noting medications are "perfect" and that Plaintiff states he is "able to function well, not too tired during the day" and that Plaintiff "denies any side effects or abuse of his medication."); AR p. 611 (May 6, 2016) (Plaintiff denies any medication side effects); AR p. 610 (July 6, 2016) (same). During the September 2, 2016 hearing Plaintiff testified that his medications made him "tired during the day." AR p. 36. Plaintiff argues that "the strength of the medications prescribed by the claimant's treating source is clearly a factor to be considered" in evaluating Plaintiff's ability to work. R. Doc. 8, p. 8. However, and as set forth herein, the medical records reflect that Plaintiff did not report side effects from his medication regime. Further, while "pain can constitute a disabling impairment," the Fifth Circuit has held that "[p]ain constitutes a disabling condition when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). There is no indication here that Plaintiff's pain stemming from his back condition constitutes such disabling pain.

[92] AR p. 462 (July 2, 2015) ("Straight leg raise was questionably positive for radicular pain, but patient is [sic] very tight hamstrings.").

[93] AR p. 313 (November 8, 2012); AR p. 321 (December 4, 2012); AR p. 330 (January 4, 2013); AR p. 337 (February 1, 2013): AR p. 345 (March 1, 2013); AR p. 353 (April 1, 2013): AR p. 361 (May 1, 2013); AR p. 369 (June 3, 2013);

18

are also medical records within the applicable time period from Dr. Lindenmayer that reflect that Plaintiff displayed a full range of motion in both upper and lower bilateral extremities.[94] In light of these medical records, the undersigned finds that substantial evidence supports the ALJ's determination that Plaintiff is able to perform light work as defined in the Social Security Regulations.

## VI. Recommendation

The analysis above demonstrates that Plaintiff's claims of reversible error are without merit. The record considered as a whole supports the finding that the ALJ applied the proper legal standards and substantial evidence supports the determination that Plaintiff was not disabled. Accordingly, the undersigned **RECOMMENDS** that under sentence four of 42 U.S.C. § 405(g), the final decision of the Acting Commissioner of Social Security be **AFFIRMED** and this action be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on March 1, 2019.

*[signature: Erin Wilder-Doomes]*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

AR p. 377 (August 2, 2013); AR p. 385 (October 2, 2013); AR p. 393 (December 2, 2013); AR p. 545 (August 31, 2015).

[94] AR p. 249 (December 3, 2014 exam noting "full range of motion of bilateral upper extremities and bilateral lower extremities."); AR p. 256 (December 31, 2014) (same).